IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:10CR447 |
| Plaintiff, | ) ) | |
| vs. | ) ) | MEMORANDUM AND ORDER |
| ANTHONY E. HOLLINS, | ) ) | |
| Defendant. | ) | |

This matter is before the Court on the Findings and Recommendation (Filing No. 33) issued by Magistrate Judge F.A. Gossett recommending that the motion to suppress (Filing No. 18) filed by the Defendant, Anthony E. Hollins, be denied. Hollins filed a statement of objections to the Findings and Recommendation and a supporting brief (Filing Nos. 41, 42) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 59.2(a).

Hollins is charged in a one-count Indictment with being a felon in possession of a firearm. He seeks the suppression of evidence obtained as a result of a July 31, 2010, traffic stop and detention of a vehicle in which he was a passenger. Hollins concedes he lacks standing to contest the search of the vehicle.

Following an evidentiary hearing, Judge Gossett issued written Findings and Recommendation. Judge Gossett concluded: the vehicle stop was supported by reasonable suspicion that the vehicle lacked license plates or in-transit stickers; Officer Gardner's request for the driver's registration, insurance card and driver's license was reasonably related to the scope of the stop, although the request followed Officer Gardner's discovery of a facially valid in-transit sticker. Judge Gossett therefore recommended that the motion to suppress be denied.

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(C), the Court must make a de novo determination of those portions of the Findings and Recommendation to which the Defendant has objected. The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

Judge Gossett provided an account of the events surrounding the traffic stop and detention. The Court has considered the transcript of the hearing conducted by Judge Gossett and carefully viewed the evidence. There are no objections to Judge Gossett's factual findings, and based on a de novo review of the record the Court adopts Judge Gossett's factual findings.

Briefly, on July 31, 2010, at approximately 10:47 p.m., Officer Sean Gardner stopped a Ford SUV in Omaha, Nebraska, because officers saw no license plates or in-transit stickers on the SUV. The SUV had tinted windows. Officer Gardner activated two spotlights normally aimed at the mirrors of stopped vehicles. Officer Gardner testified in the hearing before Judge Gossett that he still could not see an in-transit sticker, but he testified at a state court hearing that he saw the sticker with the spotlight. Judge Gossett found that Officer Gardner was first able to see an in-transit sticker when he approached the SUV on foot, from about six to ten feet away from the vehicle.[1] Even at this distance, due to darkness and the window's tint, he could not see it in detail but did verify that it was

---

[1] Hollins did not object to this finding.

"dealer issued" and therefore facially appeared to be legitimate. However, Officer Gardner testified with some detail that during the last four years he has been with the Omaha Police Department he has seen "upwards of maybe a hundred sets of In Transits that were fictitious." (Tr. 31:7-10.) Officer Gardner also testified that sets of fictitious in-transit stickers can be bought at convenience stores and from people who work at dealerships for $25 and they "do appear to be dealer-issued." (*Id.* at 31:12.) Officer Gardner testified that he does not look for a date as he approaches a vehicle, because until the appropriate paperwork is checked out he cannot be sure an in-transit sticker is valid. (Id. at 27:20-22; 32-12-14.)

Officer Gardner asked Weaver for his driver's license, insurance card, and vehicle paperwork. Weaver said he had no identification. Officer Gardner asked Weaver for identifying information to check whether Weaver had a valid driver's license and on the vehicle's paperwork. Officers found that Weaver had a suspended license and two active warrants, and they arrested Weaver. Weaver said he wanted to release the SUV to his passenger, Hollins. In this situation, officers routinely check to see if the person to whom the vehicle is to be released is a licensed driver. In checking Hollins's information, officers discovered he also lacked a valid driver's license. Therefore, the officers were required to impound the SUV, and impoundment requires an inventory search for items of value. In searching, Officer Gardner found a .380 pistol under the center console, which was broken and displaced. Hollins was arrested for possession of the gun.

## ANALYSIS

Hollins objects to the Findings and Recommendation as follows: (1) any reasonable suspicion was dispelled once the officer saw the vehicle had "valid in-transit stickers" upon

3

approaching the SUV and, therefore, the stop should not have continued past that discovery; and (2) Judge Gossett misapplied the decision in *United States v. Clayborn,* 339 F.3d 700 (8th Cir. 2003). The arguments are related.

The Defendant's argument is premised on Officer Gardner finding a "valid" in-transit sticker upon approaching the SUV. However, the defense ignores his testimony that even if he sees a date on an in-transit sticker upon approaching a vehicle he does not rely on that date. He testified that in his experience during the last four years as an Omaha Police Officer he has encountered many fictitious in-transit stickers and that such invalid stickers can be bought. For that reason he does not rely on any date viewed on the sticker until he has inquired to determine whether the in-transit is valid. Because, in light of this testimony, it cannot be said Officer Gardner saw a "valid" in-transit sticker when he approached the SUV, the Defendant's argument fails.

Turning to *Clayborn*, the facts are as follows. Clayborn was stopped for not having license plates. Clayborn told the officer he had an in-transit tag, which the officer had not noticed as he approached the car. Clayborn was asked for his registration, insurance card, and driver's license. Clayborn could not produce a driver's license, and during this conversation the officer detected the odor of marijuana coming from the car. A computer check revealed a suspended license, which caused Clayborn to be arrested. The car was searched pursuant to the arrest and odor of marijuana. A pistol, marijuana, and ammunition were found. *Clayborn,* 339 F.3d at 701.

Clayborn did not challenge the stop because it was "based on an objectively reasonable, although mistaken, belief that a traffic violation had occurred." *Id.* The issue was whether the officer's requests for documentation were reasonably related to the

4

purpose of the stop. *Id.* In answering that question in the affirmative, the Eighth Circuit noted the inquiry was limited to informing Clayborn for the reason for the stop and the request for paperwork as well as its consistent holding that "'[a] reasonable investigation following a justifiable traffic stop may include asking for the driver's license and registration.'" *Id.* (quoting *United States v. Allegree,* 175 F.3d 648, 650 (8th Cir. 1999)).

Hollins argues that Judge Gossett read the facts and holding of *Clayborn* too broadly, and the facts in *Clayborn* differ from those in his case. He argues that in *Clayborn* the officer did not see an in-transit sticker upon approaching the car while in this case Officer Gardner saw a "valid" in-transit sticker upon approaching the SUV. Again, Officer Gardner testified that he did not see a date on the sticker and, even if he had seen one upon approaching, he would not consider the sticker to be valid until he investigated its legality. As Judge Gossett stated, the in-transit sticker in Hollins's case was merely "*facially* valid." (Filing No. 33, at 10 (emphasis added).) Because the sticker was "facially valid," for the reasons testified to by Officer Gardner, his inquiry for Hollins's paperwork was reasonably related to the scope of the traffic stop–the registration of the vehicle. The facts in *Clayborn* differ slightly; however, that difference does not negate its application to this case given the testimony in this case regarding the high number of fictitious in-transit stickers experienced by Officer Gardner in Omaha.

Hollins argues that the facts of *United States v. McSwain*, 29 F.3d 558 (10th Cir. 1994), are closer to those in this case. McSwain was stopped for the purpose of verifying the validity of his vehicle's temporary registration sticker. *Id.* at 560. The officer verified its validity before he requested documentation from McSwain. *Id.* at 561. The Tenth

Circuit Court of Appeals concluded that the officer's request for documents exceeded the scope of the investigative detention and violated the Fourth Amendment. *Id.* at 561-62. However, in *McSwain* the officer was satisfied upon approach to the car that the sticker was valid. That fact distinguishes *McSwain* from Hollins's case in which Officer Gardner did not see a date on the sticker upon approach and, for the reasons stated by Officer Gardner, even if he had seen a date he would not have been persuaded until he checked Hollins's paperwork that the sticker was valid.

Hollins then argues that the Eighth Circuit has "itself endorsed the meaning of the *McSwain* decision and noted the pivotal distinction of suspicions reasonable still present versus those already dispelled, citing *United States v. Polar,* No. CR. 04-223 JRTRLE, 2004 WL 2980215 (D. Minn. Dec. 15, 2004). First, the Court notes that the *Polar* decision was written by the district court in the District of Minnesota and not the Eighth Circuit. *Id.* In any event, in *Polar* the officer detected an odor of marijuana before he could determine whether an individual was inside the vehicle, the reason for the stop. The marijuana odor allowed him to expand the scope of the investigation. The *Polar* court distinguished *McSwain* as a case in which the officer "had an opportunity to dispel [his] initial suspicions before speaking with the driver, thus rendering the continued detention illegal." *Id.* at *5. The *Polar* court distinguished *McSwain* for the same reason this Court distinguishes *McSwain* from Hollins's case. Because in Hollins's case Officer Gardner did not have the "opportunity to dispel [his] initial suspicions before speaking with the driver," *id.*, *McSwain* does not apply to Hollins's case.

As Judge Gossett stated, an officer's articulable and reasonable suspicion that a vehicle is unregistered provides a reason under the Fourth Amendment for a traffic stop

and detention of the driver to check for a driver's license and the vehicle's registration. (Filing No. 33, at 13 (quoting *Delaware v. Prouse,* 440 U.S. 646, 663 (1979).)  In Hollins's case, Officer Gardner provided an articulable and reasonable suspicion for the stop and detention in order to check the status of the vehicle's registration.

Finally, Hollins argues that because the state court granted his motion to suppress this Court should grant his motion filed in this case.  However, the Court has not considered the state court ruling in part because no transcript[2] of the state court hearing or any state court documents were introduced into the record of this case.

For the reasons discussed,

IT IS ORDERED:

1. The Magistrate Judge's Findings and Recommendation (Filing No. 33) is adopted in its entirety;

2. The Defendant's objections to the Findings and Recommendation (Filing No. 41) are overruled; and

3. The Defendant's motion to suppress (Filing No. 18) is denied.

DATED this 2nd day of June, 2011.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[2] The defense had the state court transcript in its possession.  (Filing No. 32, at 38:24-39:5.)